The next case for argument is 24-1145, Aortic Innovations v. Edwards Lifesciences. Mr. Campbell, we're ready when you are. Mr. Perry, you're organized here. Thank you, Your Honor. Okay, please proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. John Campbell for Aortic Innovations. The District Court erred in finding that the term outer frame was not entitled to its plain meaning because neither the claims, specification, or prosecution history support a finding that the inventor, Dr. Shaharari, clearly intended to define the outer frame of the transcatheter valve to mean only a self-expanding frame. This Court shall reverse. Can I ask a preliminary question, which is I don't even understand why you don't think that we would dismiss the 538 patent in light of the IPR cancellation? Your Honor, what's on appeal here is a claim construction involving four patents. I'm not talking about dismissing with respect to the other patents. I'm talking about dismissing with respect to the patent that the board has canceled, that the PTO has canceled. Your Honor, if that's appropriate, if this Court deems that appropriate, that's fine. When you're appealing a claim construction that applies to four patents, trying to explain that the appeal itself is unchanged, it just didn't make sense to, it seemed very convoluted. I think you would agree at this point, you cannot continue to assert the 538 patent. Isn't that right? There are certain claims. Certain claims have been invalidated by the PTO. Those claims, which I believe are the asserted claims here. Well, the case was stated as to the 538, so there's still things to work out potentially at the district court as to whether the unasserted claims can be asserted or not. But certainly those claims can no longer be asserted. They've been held invalid. There's no case in controversy with respect to those claims. With respect to those claims, but it doesn't change the case or controversy with respect to this appeal. For the other claims. Right. Because we're just dealing with a claim construction issue that applies across all of them. Let's turn to the claim construction issue. Assume that I believe that our Edwards case, the interchangeable use of graft and intraluminal graft was by itself a sufficient reason to construe graft as intermittent graft. How do you distinguish Edwards from this case? Assuming that interchangeable use was solely sufficient under the Edwards case? I wouldn't agree with that assumption, but I understand that. So is your answer to me, if it were the basis upon which the court reached its conclusion, then would you say that that governs your case and you lose? No. Okay, why not? So, first of all, I wouldn't agree with that premise. But accepting that premise. Here what we have, in that case, you had, well, it's difficult to accept the premise and then talk about that case. Here what we have is, we have several embodiments talked about. And when we get down to it, first there's discussed an endograft device that is for treating aortic aneurysms. And the patent admittedly states that the self-expanding frame provides greater accuracy and control for device 10. But that's not the device that's claimed here. So then when we get to the device here, you only have four instances of referring to the self-expanding frame. Just four. And those are describing the middle, distal, and proximal pieces of part of the frame. And then the delivery. Those are the four instances that are in column 18 and 19. Those four instances are using, then, language that is nearly verbatim to the endograft device that benefits from this, back in columns 11 through 15. So those references there. There's two different basic embodiments being disclosed in this patent. There's the dual-frame embodiment, where there's an outer frame and an inner frame. And then there's the other kind of embodiment, which I'll just call the serial frame, where the self-expanding frame is attached to the balloon-expanding frame in an end-to-end way. Whereas in the dual-frame configuration, the balloon-expanding frame is housed within the self-expanding frame. Is that fair to say? Yes, if you ignore the endograft device. Well, we're talking about what is being claimed here. Okay. Which is directed to the proximal component, right? When we talk about various embodiments, there is a whole discussion of an endograft device, then there's the transcatheter. The references in the patent to an outer frame come up only in the context of the dual-frame embodiment. Is that right? They come up with respect to the endograft device? The only time the term outer frame appears is in the context of the dual-frame configuration, i.e. with respect to figures 8-16 and figures 20-22. Is that right? I mean, I've read this patent, and I'm just trying to get a confirmation. Those are the only times I see the term outer frame being used. Am I right about that? I believe you're right that those are the only times the term outer frame is used. And every time it talks about the outer frame for those two configurations, it refers to a specific element number. For figures 8-16, it refers to element number 216. For figures 20-22, it refers to element number 416, right? Yes, John. At the same time, during those passages referring to element number 216, it seems to go back and forth using other terms to reference element number 216. For example, self-expanding outer frame, self-expanding frame. Same thing with element 416, later in the patent. Self-expanding outer frame, outer frame, self-expanding frame. So in the context of this patent, every time outer frame comes up, it is being used in an interchangeable way with these other two terms. It leads those discussions with identifying element 216 or 416 as self-expanding outer frame. And then, as you go down further through the spec each time, it then starts to use these shorthand expressions. Outer frame or self-expanding frame, 216, 416. And so in that way, this spec seems to make it pretty clear, pretty painfully clear, that the patent drafter is locking in the idea that outer frame is the same thing as self-expanding outer frame. So why is that a misunderstanding of the specification? So for two reasons, John. First of all, when you're talking about 216, you're talking about the portion of the endograph device. The endograph device, the patent, when it goes through all of that explanation of the endograph device, figures 8 through 16, it concludes in column 15, that for the endograph device, greater accuracy and control is gained from the self-expanding frame. So that's true for the endograph device, but that's not what we're talking about here. We're talking about the transcatheter aortic valve. So then when you look at the transcatheter aortic valve, which is discussed, the dual frame in column 17 through 19, as your Honor points out, the introduction to this is self-expanding outer frame. Self-expanding outer frame 416. And then it says again, next line, self-expanding outer frame 416. Then the following line, self-expanding outer frame 416. Then a few lines down, it says the outer frame 416. Another line down, the outer frame 416. Next paragraph, the outer frame 416. Why isn't that really screaming at me, the idea that outer frame and self-expanding outer frame are the same thing, except that saying outer frame is just a shorthand term for the more lengthy label self-expanding outer frame? I think when you have the more lengthy introduction of this, through the three instances of self-expanding outer frame, what that says is that if it's a self-expanding outer frame, not all outer frames are self-expanding. Where does it say that? That I did not see anywhere. Well, I think that's similar to what this court reached a conclusion in Forner related to attached. It's similar to the conclusion. Well, the problem here is the patent keeps referencing the element number, the element number 416. Therefore, because you keep saying the element number 416, I have to understand whatever label you're using in reference to element 416 as being the same thing. Because element number 416 can't be some shape-shifting element that moves around and then all of a sudden contorts into different shapes and configurations. It's the same element number. It's the same thing. And the same thing keeps being referred to as either the outer frame or the self-expanding outer frame. Right. It's the same element number. But it starts off introducing that as a self-expanding outer frame. And then to your honest point, uses a shorthand. Similar to the way this court said in Phillips that steel baffles implied that not all baffles are steel. Introducing this as a self-expanding outer frame tells you not all outer frames are self-expanding. So just because it then refers back in a shorthand way doesn't then... I could almost agree with you if we didn't have all of these constant references to the element numbers. It's the usage of the element numbers that to me really locks you in, traps you into a corner, and leaves no room for doubt that outer frame means self-expanding outer frame. Well, Your Honor, it is the same element number. It's introduced as self-expanding outer frame. It tells you not all outer frames are self-expanding. And then it uses a shorthand four times to go through the different parts of the frame. And so that shorthand... What would be your best evidence in this spec that would tell me that I shouldn't think of the reference to outer frame as necessarily always being a self-expanding outer frame? Well, I think you've got in the summary of the invention, there is... What's the column in the paper? It's the column four, line 64 to 67, explains that a balloon expandable frame can be used to engage the outer surface into the aortic annulus. That's describing what I referred to as the serial frame embodiment, not the dual frame embodiment. Is that right? Where you have the self-expanding frame up here and then attached beneath it is the balloon expanding frame. And then, of course, in that instance, when you expand the balloon expanding frame, necessarily the outer surface of that would be making contact with the aortic annulus in that instance. But that's not true for the dual frame embodiment. I don't know why that discussion there would be limited to the serial frame as opposed to the outer. It doesn't refer to serial. It doesn't refer to dual frame. It's not limited in that way. It's describing part of the invention that can be engaged with a balloon expandable frame and the outer surface engaged with the aortic annulus. There's no reason that that can't be the balloon expandable outer frame and work for the dual frame embodiment. The patent also talks about having the various frames welded together. Obviously, that's going to require a singular expansion mechanism. The claims refer to expanding from the radially compressed to the radially expanded positions through a balloon expandable outer frame. There is a discussion that the single expanded frame may be an outer frame. There's the incorporation of reference of the Anderson patent, which is all about examples of balloon expandable stents. I think there's a lot in here that suggests that the frame is not, unlike in the Edwards case where the interluminal graft was the invention, self-expanding frames and balloon expandable frames existed prior to this invention. That's not the invention. The method of expansion could be interchanged here as discussed throughout the specification. Okay. You're willing to rebuttal, so why don't we save that. Thank you, Judge Prost, and may it please the Court. The specification does describe these terms interchangeably. The district court so held, and my friends on the other side do not dispute that in this court. In other words, if the case comes to this court, it is undisputed that the words are used interchangeably. Do all interchangeable uses necessarily mean that you have to understand the claim term to mean the other referred to term? If they refer, Your Honor, to the precise component or object reference number, it's not cited in the briefs. This court made that point, I think, in the Apple versus Weiland case, which references the Edwards case and characterizes it exactly that way, that where the interchangeable use speaks to a reference number by number and uses it interchangeably as to that number, a person of skill in the art would understand it. And to go to Thorner, which didn't get addressed, but I'm sure it will, that's the ultimate question, right? How would a person of skill in the art understand this specification? When we have 27 instances of using 416 or 216, 10 times self-expanding, 27 times outer, a person of skill in the art would only understand that that component is self-expanding. My friend mentioned the invention. I think it's important to start there, right? Balloon expandable frames were known. Self-expanding frames were known. The invention, the claimed invention here is securing one of each together to make a device that has both a balloon expanding frame and a self-expanding frame. And the claimed advantage for that in column 15, lines 8 to 10, is improved accuracy when the self-expanding frame first secures it in the aortic channel and then the balloon expanding frame expands in the aortic annulus. The only response we heard from that, and we heard it twice today, is that that's the endograph device, not the transcatheter valve device. But, of course, the patent tells us in column 15, line 10, that it's the proximal component 212 of the endograph device is the transcatheter valve device. And if you compare figure 9 with figure 20, you will see exactly what's happening here, that those aspects that matter here, the self-expanding frame and the balloon expanding frame, are the same in both devices. This invention is a two-frame device. One is balloon expanding and one is self-expanding. That is made clear from the first sentence of the patent to the end. We included in our brief on page 17 a color-annotated version of figure 21 or 20, which I think is helpful to see how the balloon expandable frame is inside the self-expanding frame, Your Honor. And this goes to one of my friend's other points. He says, in some descriptions, the balloon expansion may come into contact with the aortic annulus. Judge Chan, you're right that that discussion is in connection with the serial frame, but even in the dual frame, if you look at that picture on page 17, the balloon... 17 of the red brief? 17 of the red brief, yes, Your Honor. After the self-expanding frame expands within the aorta, the balloon expanding frame is then expanded using the balloon and may come into contact through the outer frame with the aortic annulus. And this is described in the patent, Your Honor, in column 19, when they talk about deploying the device through the sheath. When the sheath is withdrawn, first the self-expanding frame expands into the aorta. Then the balloon is manually expanded so that the inner frame expands out to where the outer frame is. That is the claimed invention. That's the stability that is recited in page 15. Fine, that's their invention. Granted. But that's not our device. And the claim construction here, going back to the point, is that interchangeable use. Judge Chan, you asked, and Judge Prost, you asked, does Edwards really stand for the proposition that interchangeable use is sufficient? We would submit that it does. Or it can be. It can be if a person of skill in the art would so understand the specification. And we test that question in the usual tools of claim construction, right? First, we find interchangeability. If there is interchangeable use in the specification of two or three different terms to describe the same component, then a person of skill in the art would naturally understand that component to be any of those two or three terms. Do you think it would be better to modify the construction to say, when the claim says outer frame, it's the same thing as self-expanding outer frame, not self-expanding frame? Yes, Your Honor. I think the full construction, the full explanation in the patent is self-expanding outer frame, and then the two shorthands are self-expanding frame and outer frame. But this district court, my understanding, said outer frame means self-expanding frame. He said self-expanding frame. That was the point of dispute here. So I guess what I'm trying to figure out is if perhaps the better, most accurate understanding of interchangeable use in the context of this patent, because we have to take account that self-expanding frame is also used for the serial frame, it really ought to be outer frame and self-expanding outer frame, then does that disturb anything here? It does not disturb anything here, Your Honor. And when he talked about interchangeability, he used the outer frame language too, right? Correct. The judge found, and we agree, that there are three terms used interchangeably in this specification, self-expanding outer frame, self-expanding frame, and outer frame. They are all referred to in columns 17 and 18, which is the main disclosure of the dual frame transcatheter valve device, interchangeably to refer to component 416. Judge Chen, we proposed positioned outside of as part of the construction. Our friends actually didn't oppose that. They agree there's some outer locational aspect of the outer frame. The court read it as self-expanding solely. We certainly wouldn't object to self-expanding outer frame. Analogies are always tricky here. I think we have a structural adjective, self-expanding, we have a locational adjective, outer, and we have a noun, frame, right? We have all three. Then they are used shorthand. If one understands them all, they all should apply. What if the claim didn't say outer frame and inner frame? What if it said first frame and second frame? Well, setting aside the question of whether there's sufficient disclosure to support that, but as a matter of claim construction. Then there's no interchangeability issue. Well, we would have a description problem, Your Honor, but just as a matter of claim construction, there's two ways to run that hypothesis. One would be on this specification, if the claim said a first frame and a second frame, then we would have to say, well, what would a person of skill in the art understand from the specification that the inventor disclosed as to that product? I would come back to the same 216-416 analogy because the only outer-inner discussion is in the dual frame disclosure. If you have frame one and frame two, one's inner, one's outer, you'd have the same analysis. The second would be, I think more analogous hypothetical here, would be first frame and second frame, and then you had in this specification, a slightly different specification, wherein there is a first frame that is both self-expanding and outer, and wherein there is a second frame that is balloon-expandable and inner because that would be true interchangeability or definition, which is what we have here given the way this inventor chose to write his specification. I should point out what's happening here. You rewrote my hypothetical. I tried to answer them both, Your Honor. I think you can go down two forks. This specification, the application was filed after our device, which is balloon-expandable, was already on the market. So this was written to avoid our prior art. It has the balloon-expanding and self-expanding frame. The patentee has then pursued many additional claims coming off the same specification. This is the many generations down the line these claims are at stake, and they keep changing the words of the claims by pulling things out of the specification but then wanting to ignore the rest of the specification. We have one of these cases I submit here, Your Honor, where the patentee can't run away from their own specification. They disclosed a device. They got a patent on that device. But that device has two frames. One's balloon-expandable, one's self-expanding. They're secured to one another in one of two configurations, and as to the outer frame and the dual-frame configuration, we know because they've told us 27 times, 35 times, however many you want to count, that it is self-expanding. And that's the disclosure of the patent. And when a patentee takes the words from the claim, or excuse me, from the specification used in the claim, they need to follow the definition that's given in the specification. We know the lexicography rule. We know the Edwards rule. And we really don't have any response to that here other than plain language, but we have language here that is defined by the patent. Did you make a different argument before to the PTAB? We did not. In the PTAB, we went with the patentee's construction. In other words, we didn't have a claim construction argument in the PTAB. The PTAB proceedings went first, as often do, before we got to claim construction of the district court. We went to the PTAB and said, assuming the patentee says these have plain and ordinary meaning, assuming that is the correct construction, then these patents are invalid over the prior art, including our own disclosures of the balloon expandable devices. The PTAB agreed as to certain claims and not as to others. There was no claim construction dispute presented to the PTAB. We also made clear in both the PTAB and the district court that we were making that argument on a broad construction purely for validity purposes. Does it make a difference? Does it make a difference that you used a different argument? You were looking for plain and ordinary meaning before the PTAB? I don't think it does, Your Honor. It's not a switch. You switch from plain and ordinary meaning of the terms, and you're arguing now a specialized, multifaceted, hybrid strategy. Judge Reyna, if we had had no PTAB proceedings and we were in district court, we would have made the argument, which the challenger makes in virtually every case, that the claims should be construed narrowly so that there is no infringement, but if the patentee's broad construction is adopted instead, then the claims are invalid. And in district court, that happens all the time. This court approved that in the Stryker case. That is the normal way. We now have this parallel procedure we've had since the AIA, the parallel proceeding of the PTAB, which is, of course, a tribunal of limited jurisdiction. There is no infringement determination in the PTAB. It's only validity and only limited amounts of validity. And the case goes there on the patent owner's construction. And the PTAB has said this over and over again. We cited the Nintendo case. There are others where the PTAB says the challenger is not required to look ahead to the infringement contentions. They're entitled to have the validity of the patent tested on the patent holder's construction, as you would in an ex parte re-exam, as you would in the initial exam, right? The patent holder gets to make the... Not really. I mean, you're in my PR. We have plenty of challenges to claim construction. Your Honor, where there is a legitimate dispute about claim construction, the PTAB is required to resolve it. This court has said that many times. But where the question is validity of the patents as construed by the patent holder, when there has been no construction yet in the district court, that the challenger is not required to preview the infringement case, which may not have been developed, right? This case, three of the four patents were stayed. It often is the case where all the district court cases stayed, right? So it goes up to the PTAB before there's any infringement proceedings, any discovery, any expert reports in the district court. So the parties may not even know what the infringement... Now, do you have a forfeiture argument in your briefing with respect to this issue? Well, we have a forfeiture argument as to the doctrine of judicial estoppel, which they raised later as a doctrine. I think the broader point is this issue, first, it arises all the time, but second, they presented this to the district court. We explained exactly what was happening, and the district court saw no impediment to reaching the narrower claim construction here in light of the specification, and that there was no grounds, no inconsistency, to use Judge Rainer's term, between the positions of the two cases. One was simply the patent owner's approach for validity, one was ours. And the district court did not stop on that, even though those arguments were made with a different label. Your Honor, in conclusion, unless there are further questions, we do think Edwards, our own case, ought to be applied here, so that Edwards 2 makes clear that interchangeability in these circumstances also provides definition, and therefore this claim construction should be affirmed. Thank you. May it please the Court. Judge Chen, I think your hypothetical, I think, actually highlights the problem. If you construe this, the outer frame, as self-expanding outer frame, you're just importing a limitation. The word's outer frame already exists in the claim. You're just adding self-expanding, and now making that all outer frames have to be self-expanding. That's simply importing a limitation from the specification, which is contrary to this Court's holding in Phillips. If we think, though, that outer frame means self-expanding outer frame, just like graft meant interluminal graft in Edwards, Edwards 1, does that in any way disturb the stipulation of non-infringement? Because we're not necessarily saying outer frame means self-expanding frame. We're saying outer frame means self-expanding outer frame. I don't think it should make a difference, but I'm checking with you. No, it would not make a difference to the stipulation. But I think it highlights the problem. It shows we're just importing a limitation of being self-expanding when there's no basis to it. I assume Aortic is continuing to prosecute some continuations here off of this spec? We have, yes. Maybe you'll have a first claim, first frame, second frame. Your Honor, it is suggested claim language that I'm sure Dr. Shorter will take into consideration. We'll see if you get past the written description, scholar. But I think here what we see is Thorder says interchangeability alone is not enough. In Edwards, interchangeability, Edwards case, interchangeability alone was not enough. In Bell, it wasn't enough. In Tate, it wasn't enough. There were descriptions of that being the invention. That doesn't exist in this case. So this case would be the first case to say just using a term with the same numerals means we're going to say that that's lexicography and then hold you to an outer frame being a self-expanding outer frame. I think that would diverge from this Court's prior claim construction jurisprudence. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning.